UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO.: 4:09CV-76-M

MABLE A. JOHNSON                                                          PLAINTIFF

v.

CAREER SYSTEMS DEVELOPMENTS/
DJI JOINT VENTURE, *et al.*                                              DEFENDANTS

### MEMORANDUM OPINION AND ORDER

The plaintiff, Mable A. Johnson, a former employee of the defendant, Career Systems Development (CSD), instituted this action alleging that CSD and the other defendants discriminated against her based on her age and race and retaliated against her for exercising various statutory rights.  Arguing that the plaintiff signed an agreement to resolve these issues through arbitration, the defendants, other than Strategic HR Services, have moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively, to stay this action and compel arbitration [DN 4].  Fully briefed, this matter is ripe for decision.

### I.  INTRODUCTION

The plaintiff worked as an accountant in the finance department at the Earle C. Clements Job Corps Center in Morganfield, Kentucky for approximately 20 years.  During that time, the Center was operated by various companies that contracted with the United States Department of Labor, the most recent of which was CSD, which began operating the center in May 2003.  While Johnson was employed by CSD, the company initiated a voluntary alternative dispute resolution policy that allowed CSD and its employees to resolve their disputes through various

levels of mediation or arbitration.  In January 2007, approximately three months after the

voluntary program was implemented, the company made it mandatory by requiring that all

employees sign an acknowledgment form indicating that they received and understood the

policy.  According to Johnson, CSD threatened to terminate the employment of any employee

that did not sign the agreement.  Johnson signed the agreement rather than risk losing a job she

held for 20 years.  Johnson alleges that CSD subsequently discriminated and retaliated against

her in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in

Employment Act of 1967 by terminating her employment on May 25, 2007.  In addition,

Johnson contends that CSD defamed her in the process of terminating her employment.  She

filed this lawsuit seeking compensatory and punitive damages as well as injunctive relief.  CSD

and the other defendants other than Strategic HR Services argue that this matter is controlled

by the mandatory arbitration agreement and seek an order compelling arbitration.

## II.  DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*., which generally applies to

"a contract evidencing a transaction involving commerce to settle [a controversy] by

arbitration," renders such arbitration agreements "valid, irrevocable, and enforceable, save upon

such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; see

also Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 109 (2001) (applying the FAA to an

arbitration provision contained in an application for employment).[1]  Even statutory claims, such

---

[1]       The plaintiff has not taken issue with the defendants' assertion that the FAA is applicable to the arbitration agreement.

as those brought by the plaintiff, "may be the subject of an arbitration agreement, enforceable pursuant to the FAA."  Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26 (1991). However, before the Court may compel arbitration, it "must first determine whether a valid agreement to arbitrate exists."  Glazer v. Lehman Bros., Inc., 394 F.3d 444, 450 (6th Cir. 2005) (citing 9 U.S.C. § 2).

In assessing whether a valid agreement to arbitrate exists and whether the current controversy falls within the scope of that agreement, the Court must turn to state contract law to determine whether the arbitration clause was validly obtained.  Id. at 451.  Although the Court must generally look to state contract law, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration,"such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  Moses H. Cone Memorial Hops. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).  Here, the plaintiff makes four arguments that her claims are nonarbitrable.  Each will be addressed in turn.

A.

The plaintiff first argues that the arbitration agreement is not enforceable because the acknowledgment form did not indicate that she was giving up her right to a trial by jury.  She contends that when the voluntary arbitration agreement was distributed to employees in November 2006, it contained an acknowledgment clause that was considerably different than the acknowledgment she signed.  The original policy stated:

> I acknowledge receipt of the forgoing Arbitration Policy and understand that it provides for binding arbitration of all disputes as defined in the Policy.  *I also understand that as a result of the Arbitration Policy I am not entitled to a trial by jury of any claim I or the Company may have against each other.*

3

(Defs.' Ex. A at 11 (emphasis added).)  The acknowledgment form actually signed by the plaintiff on January 29, 2007, contained language that did not indicate that she was giving up her right to a trial by jury:

> I acknowledge receipt of the forgoing Arbitration Policy and understand that it provides for binding arbitration of all disputes as defined in the Policy.

(Defs.' Ex. B at 1.)

Although the plaintiff contends that the defendants "intentionally" changed this language to remove any discussion of a trial by jury, she does not explain why the defendants' intent is significant nor does the Court find that this change makes the arbitration agreement unenforceable. The policy itself, which the plaintiff acknowledges she received and understood, explicitly provides in bold font, "Both parties expressly waive their respective right to trial by jury." (Defs.' Ex. A at 8.)  And even had this language been omitted from the policy, it would nevertheless be implied from the parties agreement to resolve their disputes through binding arbitration, for the right to a jury trial only "attaches in the context of judicial proceedings after it is determined that litigation should proceed before a court." Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 307 (4th Cir. 2001); see also Burden v. Check Into Cash of Ky., LLC, 267 F.3d 483, 492 (6th Cir. 2001) (notice that a party is waiving her right to a jury trial is not a necessary component of an arbitration agreement). It is simply "'a necessary and fairly obvious consequence of an agreement to arbitrate'" that the parties waive their right to a jury trial. Burden, 267 F.3d at 492 (quoting Sydnor, 252 F.3d at 307). A party to the agreement "cannot use their failure to inquire about the ramifications of that clause to avoid the consequences of agreed-to arbitration." Pierson v. Dean, Witter, Reynolds, Inc., 742 F.2d 334, 339 (7th Cir.

4

1984).

B.

The plaintiff also argues that the arbitration agreement is void because it is against

Kentucky's public policy as codified in KRS 336.700(2),[2] which makes it improper for

employers to require employees to arbitrate any dispute, and 417.050,[3] which renders such

agreements unenforceable. The defendants argue that these provisions are inapplicable because

they are preempted by the FAA. The plaintiff contends that the Court should enforce these

statutory provisions because they are applicable to all contracts generally.

It is now well-established that Congress, in enacting the FAA under its Commerce

Clause powers, created "a body of federal substantive law" intended "to foreclose state

legislative attempts to undercut the enforceability of arbitration agreements." Southland Corp.

v. Keating, 465 U.S. 1, 16 (1984). To be sure, the FAA explicitly permits a party "to assert

general contract defenses such as fraud to avoid enforcement of an arbitration agreement." Id.

n.11. However, the ground asserted by the party must "exist[] at law or in equity for the

revocation of *any* contract." Id. (emphasis in original). Here, the plaintiff's contention that

these statutory provisions are rules applicable to contracts generally simply defies the plain

---

[2]     Specifically, this provision provides: "Notwithstanding any provision of the Kentucky Revised Statutes to the contrary, no employer shall require as a condition or precondition of employment that any employee or person seeking employment waive, arbitrate, or otherwise diminish any existing or future claim, right, or benefit to which the employee or person seeking employment would otherwise be entitled under any provision of the Kentucky Revised Statutes or any federal law." KRS 336.700(2).

[3]     This section recognizes the validity of arbitration agreements generally, but also states: "This chapter does not apply to . . . Arbitration agreements between employers and employees or between their respective representatives."  KRS 417.050(1).

5

language of the provisions. KRS 417.050 recognizes the validity of arbitration agreements except *arbitration* agreements between employees and their employers. KRS 336.700(2) makes it improper for employers to require employees to *arbitrate* existing or future claims.

The statutory provisions relied upon by the plaintiff are similar to the one at issue in Southland. There, a California law regulating franchise agreements provided that "'[a]ny condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void.'" Id. at 10 (quoting Cal. Corp. Code § 31512 (West 1977)). The California Supreme Court interpreted this provision as invalidating any contract that purported to deny a party her right to judicial consideration of claims brought under the statute, which essentially rendered all arbitration provisions in franchise agreements invalid. Id. Based upon this interpretation, the United States Supreme Court held that the statute directly conflicted with § 2 of the FAA and violated the Supremacy Clause. Id. at 16. Although the statute was one of seemingly general applicability, the Court found that the statute was a "legislative attempt[] to undercut the enforceability of arbitration agreements." Id. The Court concluded that the FAA simply prohibited states from enacting such a law that provided franchisees with "special protection" from agreements to arbitrate. Id. n.11. In Perry v. Thomas, the Supreme Court similarly held that a California state statute mandating a judicial forum for wage dispute litigation between employer and employee violated the Supremacy Clause. 482 U.S. 483, 492 (1987). Notwithstanding the state's strong public policy against mandating arbitration in wage dispute litigation, the Supreme Court held that this policy was preempted by "'[t]he preeminent concern

6

of Congress . . . to enforce private agreements into which parties had entered . . . .'" Id. at 490

(quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 221 (1985)) (internal markings in

original).  Here, Kentucky's policy providing "special protection" to employees is similarly

preempted by this Congressional policy.  The provisions of the Kentucky statute cited by the

plaintiff expressly make it unlawful for employers to require employees to enter into arbitration

agreements and make such agreements unenforceable.  These provisions unmistakably conflict

with § 2 of the FAA and violate the Supremacy Clause.

The plaintiffs argument that the arbitration agreement is invalid under general contract

principles because it "diminish[es] an[] existing or future claim, right, or benefit," i.e. her right

to a jury trial, fares no better.  If a state could invalidate all employment contracts that purport

to deny an employee her right to a jury trial, then "states could wholly eviscerate Congressional

intent to place arbitration agreements upon the same footing as other contracts" simply by

enacting a statute similar to KRS 336.700(2).  Southland, 465 U.S. at 16 n.11.  All arbitration

agreements in employment contracts would be invalid under state law which "is in conflict with

the Arbitration Act and would permit states to override the declared policy requiring

enforcement of arbitration agreements."  Id.

C.

The plaintiff's next argument is that the arbitration policy is unenforceable because it is

unconscionable.[4]  According to the plaintiff, she had no meaningful choice or opportunity to

---

[4]      An analysis of unconscionability is generally divided into two inquiries.  Procedural unconsconability, also known as "unfair surprise . . . pertains to the process by which an agreement is reached and the form of an agreement, including the use therein of fine print and convoluted or unclear

negotiate over the arbitration agreement and that the defendants used their superior bargaining

power by threatening to terminate the plaintiff's employment if she did not agree to the terms

of the policy. Under Kentucky law, "[a]n unconscionable contract has been characterized as

one which no man in his senses, not under delusion, would make, on one hand, and which no

fair and honest man would accept, on the other." Mortgage Elec. Registration Sys., Inc. v.

Abner, 260 S.W.3d 351, 354 (Ky. Ct. App. 2008) (quotation omitted). An arbitration clause

will generally be found unenforceable if it "contains a substantial waiver of a parties' rights."

Id. (quotation omitted). However, this narrow doctrine is only "directed against one-sided,

oppressive and unfairly surprising contracts, and not against the consequences per se of uneven

bargaining power or even a simple old-fashioned bad bargain." Conseco Fin. Serv. Corp. v.

Wilder, 47 S.W.3d 335, 341 (Ky. Ct. App. 2001) (quotation omitted).

  1. Procedural Unconscionability

  The plaintiff contends that the policy is procedurally unconscionable because it is a

contract of adhesion. A contract of adhesion has been described as a "standardized contract,

which [is] imposed and drafted by the party of superior bargaining strength, [and] relegates to

the subscribing party only the opportunity to adhere to the contract or reject it." Id. at 342 n.20

(citation omitted). However, a finding that a contract is one of adhesion, does not make it *per*

*se* improper. Id. "On the contrary, [such contracts] have been credited with significantly

_____

language." Conseco Fin. Serv. Corp. v. Wilder, 47 S.W.3d 335, 342 n.22 (Ky. Ct. App. 2001) (quotation omitted). Substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." Id. (quotation omitted). A showing of both is generally required. 8 Williston on Contracts § 18:10 (4th ed.) ("It has been said that this formulation requires a showing that the contract was both procedurally and substantively unconscionable when made.")

reducing transaction costs in many situations." Id. (citation omitted).  Under Kentucky law, an

arbitration agreement in a contract of adhesion will not be found to be unconscionable if there

are other alternative options available to the party having less bargaining power.  See Schnuerle

v. Insight Comm'ns Co., No. 2006-CA-002121-MR, 2008 WL 4367840, at *2 (Ky. Ct. App.

Sept. 26, 2008) (holding that a contract of adhesion for broadband internet service containing

an arbitration provision was not unconscionable because there were other companies from

which to purchase broadband services).  Here, the plaintiff has not alleged that she could not

find employment elsewhere, only that she did not want to risk losing her job of 20 years.  The

Court does not find that these allegations are sufficient to justify a finding of procedural

unconscionability. Cf. Cooper v. MRM Inv. Co., 367 F.3d 493, 501-02 (6th Cir. 2004) (holding

that an employment contract containing an arbitration provision was not procedurally

unconscionable where there may have been other local employers from which the plaintiff could

obtain employment).

    2.  Substantive Unconscionability

Nor does the Court find the policy to be substantively unconscionable.  The plaintiff has

not identified any terms of the policy, other than the waiver of her right to a trial by jury, that

she contends are unfair.  As a general matter, the Supreme Court has recognized the efficacy

of arbitration in the employment context.  "Arbitration agreements allow parties to avoid the

costs of litigation, a benefit that may be of particular importance in employment litigation,

which often involves smaller sums of money than disputes concerning commercial contracts."

Adams, 532 U.S. at 123 ("We have been clear in rejecting the supposition that the advantages

of the arbitration process somehow disappear when transferred to the employment context.").

Here, the plaintiff has not shown that the terms of the policy are so one sided so as to overcome

these advantages to arbitration. Nor can the fact that the policy essentially waived the plaintiff's

right to a trial by jury be sufficient to find the contract substantively unconscionable. See Perry,

482 U.S. at 492 n.9 (a court may not "rely on the uniqueness of an agreement to arbitrate as a

basis for a state-law holding that enforcement would be unconscionable, for this would enable

the court to effect what . . . the state legislature cannot.") As previously discussed, all

agreements to arbitrate necessarily waive each party's right to a jury trial. In light of the federal

policy favoring arbitration, the Court does not find that a waiver of this right, at least without

more, makes the contract substantively unconscionable.

D.

Because the plaintiff has entered into a binding arbitration agreement that is not voidable

upon any general contract principle, it would appear that the Court should compel arbitration

in this matter. As a final argument, the plaintiff contends that the Court should not compel her

to arbitrate this dispute because the defendants have waived or should be estopped from

asserting the arbitration provision. In particular, the plaintiff alleges that prior to her

termination, the defendants did not use and, in fact, precluded the plaintiff from using the

policy. Furthermore, she also argues that she has no obligation to arbitrate until these

contractual conditions are satisfied. However, because the Court has found that the plaintiff

entered into a valid contract to arbitrate, it has no jurisdiction to pass on these issues. Howsam

v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83-86 (2002) (questions of procedural arbitrability

10

such as waiver, estoppel, and conditions precedent to an obligation to arbitrate are for the arbitrators, rather than the Court, to decide).  If the arbitrators should determine that the defendants did not comply with any condition precedent, or that they waived or are estopped from raising arbitration as a defense, then the matter may be litigated here.  But it is for the arbitrators to pass upon those issues in the first instance.

### III.  CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that the alternative motion by the defendants, Career System Developments/DJI Joint Venture, Career Systems Development Corporation, Career Development Systems, and Owl Education and Training, Inc., to stay this action and compel arbitration [DN 4] is **GRANTED**.  The claims asserted against Career System Developments/DJI Joint Venture, Career Systems Development Corporation, Career Development Systems, and Owl Education and Training, Inc. shall be arbitrated pursuant to the arbitration policy discussed herein. **IT IS FURTHER ORDERED** that this action is **STAYED** with respect to these defendants pending completion of the arbitration process.

cc:     Counsel of Record

11